IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JAMIE GAINES BROWNING**                                                **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO.: 3:25-cv-113-JMV**

**LELAND DUDEK, ACTING COMMISSIONER OF**
**SOCIAL SECURITY**                                       **DEFENDANT**

**ORDER REVERSING AND REMANDING ALJ'S DECISION**

On March 22, 2021, the Plaintiff protectively filed an application for Title II disability insurance benefits, alleging disability beginning on October 18, 2019. The claim was denied initially on October 15, 2021, and upon reconsideration on April 29, 2020. On June 1, 2023, a telephone hearing was held. The application for benefits was subsequently denied on June 22, 2023. The Plaintiff then filed a request with the Appeals Council, which was granted on November 3, 2023. The case was remanded and the application for benefits was again denied after a telephonic hearing held on March 28, 2024. The Plaintiff then filed a request with the Appeals Council, which was denied on February 13, 2025, making the ALJ's decision the Commissioner's final decision. For the reasons that follow, the undersigned finds that the ALJ's decision shall be REVERSED and this cause shall be REMANDED.

**The ALJ's Decision:**

The Social Security regulations set forth a sequential method of evaluating disability claims. *See* 20 C.F.R. § 404.1520(b). Of relevance here, at the second step, the ALJ determines whether the claimant has a severe impairment(s) i.e., an impairment which significantly limits ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). In this case, the ALJ found that

1

Plaintiff's migraines, osteoarthritis, De Quervain's syndrome, bipolar disorder, and generalized anxiety disorder constituted severe impairments (Tr. 620, Finding 3).

The third step is to determine whether the impairments(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. *See* 20 C.F.R. § 404.1520(d). If it does, a finding of disability is directed. At this step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments, which included Plaintiff's migraines, that met or medically equaled a listed impairment for presumptive disability (Tr. 621, Finding 4). The ALJ's determination that Plaintiff's migraines, in particular, did not equal a listing, is discussed separately below.

The ALJ also determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she may push/pull as much as she can lift/carry; can frequently reach overhead with the right upper extremity and frequently reach in all other directions with the right upper extremity; can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; can frequently balance and stoop and occasionally kneel, crouch, and crawl; can never be exposed to hazards such as unprotected heights and moving mechanical parts; can never be exposed to extreme cold; is able to perform jobs requiring only simple routine and repetitive tasks and able to perform simple work related decisions; can have occasional interaction with supervisors and coworkers and never any interaction with the general public; and can tolerate few, if any, changes in the work setting (Tr. 623, Finding 5).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr. 631, Finding 6). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 632, Finding 10). Accordingly, the ALJ found that Plaintiff was not

2

under a "disability" as defined in the Act from October 18, 2019, her alleged onset date, through March 28, 2024, the date of the ALJ's decision (Tr. 633, Finding 11).

**Issues on Appeal:**

Plaintiff presents three issues on appeal: 1) whether the Commissioner erred as a matter of law in failing to properly evaluate if the Plaintiff's severe migraine headaches equal listing 11.02; 2) whether the Commissioner erred as a matter of law by improperly evaluating the medical opinion of the state agency consultant, including by failing to incorporate limitations from medical opinions the ALJ found to be persuasive; and 3) whether the Commissioner erred as a matter of law in formulating the RFC by failing to provide for any limitations related to the Plaintiff's severe migraines.[1]

**Standard of Review:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] Because the undersigned finds that reversible error exists as to Issue 1, the Court finds discussion of the remaining issues unnecessary.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Law and Analysis:**

The parties agree that in cases where a medical condition does not precisely meet a listing criterion, a medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). And, that a primary headache disorder is not a listed impairment, but it may, "alone or in combination with another impairment(s), medically *equal* a listing." SSR 19-4p, 2019 WL 4169635, at *7. The parties also agree that the "most closely analogous listed impairment" for a primary headache disorder is found in Listing 11.02, addressing epilepsy.

"While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures[2])," which may result in a finding that the claimant's primary headache disorder "medically equals the listing." *Id.* 11.02 B provides that it is *met* (not equaled) if 11.02B dyscognitive seizures

---

[2] SSR 19-4 states that Listing 11.02(B) and Listing 11.02(D) are the two pertinent listing sections that an ALJ must consider when evaluating a headache disorder.

occur at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.11.02 D provides it is met (not equaled) if dyscognitive seizures occur at least once every 2 weeks for at least three consecutive months despite adherence to prescribed treatment, and marked limitation in one area of the following: (1) Physical functioning; (2) Understanding, remembering, or applying information; (3) Interacting with others; (4) Concentrating, persisting, or maintaining pace; or (5) Adapting or managing oneself. *Id.* § 11.02(D).

*Equaling* either of these paragraphs' criteria also leads to a determination of disability. To assess whether a primary headache disorder is *equal* in severity and duration to the criteria in 11.02(B) and (D), SSR 19-4p requires additional steps for the ALJ.

For 11.02(B), a detailed description from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example…drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.) is evaluated.

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02(D), the same factors are considered as for 11.02(B) and also considered is whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

In the instant case, the ALJ when evaluating whether the Plaintiff's debilitating migraines equal Listing 11.02, concluded that:

> Pursuant to SSR-19-4p, a migraine disorder cannot meet a listing but can medically equal listing 11.02B or D. The undersigned did not request the presence of a medical expert at the hearing or for review of the evidence to determine whether the claimant's migraine headaches medically equal listing 11.02B or D as the evidence did not warrant such review. In reviewing the evidence, the undersigned finds the claimant's migraines do not medically equal listing 11.02B or D. There is **no documentation of dyscognitive seizures** occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment. Further, **the record does not contain evidence of dyscognitive seizures** occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment along with a marked limitation in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself.

(Tr. 621).

The Plaintiff contends that this is not the proper standard when evaluating whether the Plaintiff's severe migraine headaches *equal* Listing 11.02B or D. The Plaintiff argues she need not show that she experienced seizures at the frequency required under Listing 11.02 B or D. Instead, the Plaintiff is required to provide evidence that the migraine headaches occurred at the frequency necessary to equal the severity of Listing 11.02. (B) or 11.02 (D) by evaluation of the criteria for determining equality, as opposed to meeting, the listing. This error, Plaintiff contends, was not harmless.

Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam). Here, the Plaintiff asserts that she has satisfied the criteria of both Listings 11.02(B) and 11.02(D), as the record is abundant with medical visits documenting the frequency and duration of headaches, and the ALJ determined the Plaintiff is *markedly* limited in her ability to interact with others.[3]

---

[3] To demonstrate that the Plaintiff's severe migraine impairment is equal in severity to Listing 11.02B or D, Plaintiff offered the following discussion of the criteria:

6

A. A detailed description from an AMS of a typical headache event, including, all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms):

In this case, the record contains ample evidence from acceptable medical sources that describe the Plaintiff's migraine headaches. For example, medical records from a visit to one of the Plaintiff's neurologist note the location of the Plaintiff's migraines as "frontal, temporal and occipital regions and radiates to neck." (Tr. 478). This same note describes the migraines as "throbbing," "pounding," and "stabbing in sensation" and accompanied with photophobia, phonophobia, nausea, and vomiting. (Tr. 478). The note confirms that the Plaintiff visualizes sparkles, dots, and bright light before her migraine headaches. (Tr. 478). Additional notes describe the migraine headaches as "pressure." (Tr. 482; 1190). Medical notes from one of the Plaintiff's frequent trips to the urgent care describe her migraine headache as "debilitating." (Tr. 486). Medical notes from the Plaintiff's neurologist also describe the migraine headache as "debilitating" and "migraine with aura, intractable, with status migrainosus," and associated with "preceding visual aura, nausea, phonophobia, photophobia, neck pain or stiffness, dizziness or vertigo." (Tr. 1190-91; 1999). During her hearing, the Plaintiff testified that she experiences light and noise sensitivity along with her migraines. (Tr. 661; 687)

B. Frequency of headache events:
Medical records and hearing testimony in this matter confirm that the Plaintiff suffers from headaches "daily." (Tr. 478; 480; 483; 487; 1191; 2068). The medical records indicate that the
Plaintiff has headaches daily that last for days at a time. (Tr. 478; 486; 1190; 2006; 2037; 2068). Medical records from the Plaintiff's neurologists demonstrate that the Plaintiff is experiencing 6- 10 days of severe migraines a month. (TR. 478). Additional records show that the Plaintiff experiences daily headaches, and 12 severe migraines per month (480; 482). Further medical records state the Plaintiff experienced 15-18 severe migraines in the last 4 weeks. (Tr. 487; 1191). Additional records demonstrate that the Plaintiff is having 15-20 days of severe migraine headaches. (Tr. 1190). The record also indicates that the Plaintiff experiences daily headaches, with 2-3 severe migraines per week. (Tr. 2068). During her hearing, the Plaintiff testified she endures 3-4 migraines per week and that they are in fact increasing in frequency. (Tr. 659; 687)

C. Adherence to prescribed treatment:
The Plaintiff has undergone extensive treatment in an effort to manage and control her migraine headaches. She has been to a neurologist, in addition to her PCP, who she also sees for her migraines. (Tr. 486; 1892). Hearing testimony and the medical record confirm that despite taking her medication, the medication does not completely relieve her migraine symptoms. (Tr. 486; 660; 1221; 1931 ). The Plaintiff's has experienced such severe migraine headaches that she has been to the emergency room and urgent care several times. (Tr. 486; 1190; 1229). In addition, the Plaintiff has tried numerous medications, including Topamax, Qulipta, Maxalt, Depakote, Fioricet, Sumatriptan, Naratriptan, Trokendi, Zonegran, Compazine, Promethazine, Provigil, Vimpat. (Tr. 272; 478-479; 486; 1221; 1489; 1058-59). The Plaintiff has also tried Aimovig injections, as well as Botox injections. (Tr. (478; 1190; 1931).

D. Side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention):
Medical evidence in the record demonstrates that the Plaintiff has experienced severe side effects. Provigil, Qulipta, Maxalt, Depakote, Vimpat, and Ability have made the Plaintiff feel drowsy and fatigued. (Tr. 688; 1058; 1060;1489). The Botox injections caused the Plaintiff to experience a neurogenic syncopal episode. (Tr. 1190).

E. Limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations):

In this case, the Plaintiff's severe migraine headaches have created significant limitations in her activities of daily living. For example, during her hearing testimony, the Plaintiff testified her migraine headaches leave her feeling "not functional" and debilitated. (Tr. 660-61; 687). She testified that she experiences trouble concentrating as a result of her migraine headaches. (Tr. 688). The Plaintiff further stated that she needs to lie down in a dark, quiet room with an ice pack or heating pad for six to eight hours to help alleviate the pain of her migraine. (Tr. 687; 1030). In her function report, the Plaintiff reported she is unable to watch movies with her children because this can trigger a migraine headache and that she needs help taking care of her kids. (Tr. 1024; 1062).

The Commissioner, in response, simply does not address the ALJ's stated reliance for his equality evaluation on an erroneous measure—that is, his reliance on whether dyscognitive seizures occurred at least once a month for at least three consecutive months despite adherence to prescribed treatment, or where dyscognitive seizures occurred at least once every two months for at least four consecutive months despite adherence to prescribed treatment along with a marked limitation in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself.

Instead, the Commissioner argues that because the ALJ in this case stated in his decision that the evidence in this case did not warrant an expert review of the equality issue, the ALJ need not even 'articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.'" *Barkhauer v. Comm'r of Soc. Sec.*, No. 5:24-CV-00560, 2025 WL 1115618, at *22 (N.D. Ohio Apr. 15, 2025) (quoting SSR 17-2p). It notes, "generally, a statement that the [] impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. SSR 17-2p, 2017 WL 3928306, at *4. Thus, the ALJ's statement that the evidence did not warrant review to determine legal equivalence is legally sufficient to find Plaintiff's migraines did not equal listing 11.02."

I find that the Commissioner has missed the mark. That is to say that, while true enough, an ALJ is not required to obtain an expert review of the equality issue where he has, in the absence of legal error, determined that the evidence of record does not warrant the same, the problem here

---

In this case, a migraine headache history as extensive as the Plaintiff's required the ALJ to conduct a thorough analysis under Listing § 11.02(B) and §11.02(D). The treatment records support the contention that the Plaintiff consistently complained of and sought treatment for migraine headaches. These records raise a substantial question as to the Plaintiff's ability to satisfy the frequency and duration requirements of Listing 11.02, and they strongly suggest the Plaintiff's severe headache impairment equal Listing 11.02.

is that the ALJ explicitly applied the incorrect criteria for finding no evidence of equality. Rather than applying the applicable equality criteria set forth in SSR 19-4p, the ALJ erroneously relied, instead, for his assessment on the criteria for determining whether a listing has been *met.* As noted above, he explained:

> In reviewing the evidence, the undersigned finds the claimant's migraines do not medically equal listing 11.02B or D. There is no documentation of dyscognitive seizures occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment. Further, the record does not contain evidence of dyscognitive seizures occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment along with a marked limitation in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself.

(Tr. 621).

The Plaintiff, on the other hand, as set forth in footnote three, has offered considerable analysis of the application of the correct equality criteria to the facts of her case in order to demonstrate that the ALJ's legal error is likely not harmless, and no argument to the contrary is made by the Commissioner.

In accordance with the forgoing, I find that because the ALJ committed reversible error by failing to properly analyze and consider this listing, the decision is not based upon substantial evidence, and this case is to be remanded for reconsideration.

**Conclusion:**

In conclusion, I find that the ALJ's opinion is not supported by substantial evidence. Accordingly, the ALJ's decision shall be and is hereby REVERSED AND REMANDED, for further reconsideration.

**SO ORDERED** this, the 13th day of November, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**